UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| JOHN RAY WALKER, Administrator of the estate of James Daniel Walker, | ) ) ) | |
| Plaintiff, | ) ) | Civil No. 14-14-GFVT |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| BAGSHAW TRUCKING, INC., JONATHAN DENNING, and THE GOODYEAR TIRE & RUBBER COMPANY, INC., | ) ) ) ) ) | **&** **ORDER** |
| Defendants. | ) | |

*** *** *** ***

This unfortunate dispute arises from a motor vehicle accident between a vehicle driven by Mr. James Daniel Walker and a dump truck driven by Defendant Jonathan Denning. The accident was primarily caused by a tire failure on the left front steering axle of the dump truck, which was operated by Denning in the course of his employment with Defendant Bagshaw Trucking, Inc. Mr. Walker, tragically, did not survive the crash. The Defendants disagree about the cause of the tire failure, but they unite to assert the comparative fault of Mr. Walker as an affirmative defense. Plaintiff John Ray Walker, administrator of the deceased Mr. Walker's estate, seeks partial summary judgment on the issue. Because a genuine issue of material fact remains in the record, however, the Court must **DENY** Plaintiff Walker's motion.

**I**

**A**

On Thursday, September 12, 2013, a 2013 freightliner Columbia dump truck was

traveling east on Frankfort Road/US 60.[1]  Mr. Jonathan Denning operated the dump truck in the course and scope of his employment with Bagshaw Trucking, Inc.  As Mr. Denning was driving the truck, its left front tire tread began to separate from the tire.  This tire failure caused Mr. Denning to lose control of the vehicle.

At the same time, a 1999 Ford F-150 was traveling west on Frankfort Road/US 60.  Mr. James D. Walker, the Plaintiff's decedent, operated the Ford.  Upon the dump truck's tire failure, the truck veered suddenly into the westbound lane straight towards Mr. Walker's vehicle.  At some point, Mr. Walker attempted a crash avoidance by steering to the right shoulder and braking, causing skid marks on the road.  Ultimately, the dump truck and Mr. Walker's vehicle collided head-on; both vehicles struck a driveway culvert and mailbox on the shoulder of the road, and the dump truck overturned on top of Mr. Walker's vehicle.  Tragically, Mr. Walker did not survive the collision.  The Kentucky State Police concluded the tire failure was "the main contributing factor for the cause of the collision."  [R. 119-3 at 22.]  A routine toxicology report performed on Mr. Walker following the accident indicated the presence of 104 ng/mL of the opiate hydrocodone in Walker's bloodstream.  [R. 119-1 at 2.]

Plaintiff John Ray Walker, administrator of the deceased Mr. James Walker's estate, filed suit against Jonathan Denning for alleged negligent operation of the dump truck and against Bagshaw Trucking, Inc. for alleged negligence in maintaining the dump truck and its tires.  [*See* R. 16-1.]  Plaintiff Walker also named The Goodyear Tire & Rubber Company as a Defendant, asserting improper design, manufacturing, and breach of warranty related to the failed tire.  [R. 16 at 3.]  The Defendants disagree about the cause of the tire failure, but they all allege comparative fault on the part of the deceased Mr. Walker as an affirmative defense.  Plaintiff

---

[1] This factual summary is drawn in large part from the Plaintiff's partial summary judgment motion.  [*See* R. 112-1.]

2

Walker has requested summary judgment on the comparative negligence issue.

**B**

When sitting in diversity, a federal court applies the substantive law of the state in which it sits. *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). However, when considering summary judgment arguments, a federal court applies the standards of Federal Rule of Civil Procedure 56 rather than Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr. Inc.*, 807 S.W.2d 476 (Ky. 1991). *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993). Under Rule 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

3

**II**

To establish a negligence claim under Kentucky law, a plaintiff must demonstrate the existence of a duty, breach of that duty, causation, and damages. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992); *Illinois Central Railroad v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967). Ordinarily, the existence of a duty is a question of law for the Court, while breach and injury are generally questions of fact for the jury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003). The causation determination may be a question of both law and fact. *Id.* Causation creates a question of law when "'there is no dispute about the essential facts and but one conclusion may reasonably be drawn from the evidence.'" *Id.* at 92 (quoting *McCoy v. Carter*, 323 S.W.2d 210, 215 (Ky. 1959)).

Regarding a plaintiff's recovery for negligence, Kentucky has adopted a pure comparative fault scheme. *See Hilen v. Hays*, 673 S.W.2d 713, 719-20 (Ky. 1984); *see also* KRS § 411.182. Thus, where the plaintiff is also negligent in some way, his negligence does not bar recovery but instead reduces the total amount of his recovery "in the proportion that [his] contributory negligence bears to the total negligence that caused the damages." *Id.* at 720. To determine whether a party is at fault for the purpose of allocating damages, the Kentucky Supreme Court has adopted a definition from the Uniform Comparative Fault Act:

> "Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages.

*Wemyss v. Coleman*, 729 S.W.2d 174, 177 (Ky. 1987) (citing Uniform Comparative Fault Act § 1 (1977)). *See also* 13 KY. PRAC. TORT LAW § 10:59 (2015). Thus, for Plaintiff Walker to request summary judgment on the comparative fault issue is to assert that no genuine fact issue

4

exists regarding Mr. Walker's negligence—or lack thereof—when operating his vehicle during the period surrounding the fatal accident.

Notably, "summary judgment is rarely appropriate in controversies governed by a negligence standard because the facts and circumstances of each case determine the degree of care by which the defendants' conduct is to be measured." *Ashby v. Hustler Magazine, Inc.*, 802 F.2d 856, 858 (6th Cir. 1986). With this in mind, the Court determines whether the record is devoid of any genuine issues of material fact regarding the decedent's alleged comparative fault.

Plaintiff Walker maintains the evidence in the record conclusively absolves the decedent Mr. Walker from any alleged comparative negligence. First, he cites to the Kentucky State Police Collision Analysis, which states the "front passenger tire failure was the main contributing factor for the cause of the collision." [R. 119-3 at 22.] Next, Trooper Jack Hedges agreed in his deposition that "nothing that Mr. Walker did or failed to do" contributed to causing the collision. [*See* R. 112-1 at 4.] The Plaintiff's expert Mr. R. Vince Sayre, a forensic engineer, opined that the primary cause of the accident was the dump truck's tire failure. [R. 112-8.] Mr. Sayre also stated "Walker's actions, steering to his right and braking hard, were reasonable and normal" given the circumstances and amount of time Mr. Walker would have had to react. [*Id.*] Finally, the Plaintiff points to the deposition testimony of Bagshaw Trucking's expert Dr. George Nichols. Dr. Nichols did not think Walker's choice to veer to the right was "inappropriate;" rather, he acknowledged Walker's actions were reasonable in light of the circumstances. [*See* R. 121 at 6-7.]

In response, Defendants Bagshaw Trucking, Mr. Denning, and Goodyear all draw the Court's attention to the undisputed presence of hydrocodone in the decedent's blood at the time of the accident. A toxicology test performed shortly after the accident indicated the presence of

5

104 ng/mL of hydrocodone, which, according to the decedent's brother, had been lawfully prescribed to treat Mr. Walker's knee pain. [R. 119-1; R. 121 at 2.] Trooper Jack Hedges testified that this amount was more than twice what the Kentucky State Police consider an appropriate therapeutic range of the drug. [R. 119-2 at 11.] Trooper Hedges further testified that, while he could not determine for certain whether Mr. Walker would be considered "under the influence" or "intoxicated" at the time of the accident, Hedges did believe Walker "could have possibly made a more sound decision as far as which direction to go when he observed the truck in his lane" if he had not consumed that amount of hydrocodone. [*Id.* at 11-12.]

According to Trooper Hedges, a driver who consumed more than twice the therapeutic range of a drug like hydrocodone could suffer from an inability to make decisions, inability to control his vehicle, and a slower reaction time. [*Id.* at 14.] Further, while the Kentucky State Police Collision Analysis indicates that the dump truck's tire failure was "the main contributing factor for the cause of the collision," and the intoxication of Mr. Walker "did not play a factor for the cause of the collision," it also states that if Mr. Walker had not "had a high level of Hydrocodone in his system, he very well could have made a more sound decision on avoiding the path and trajectory of" the approaching vehicle. [R. 119-3 at 22.] Ultimately, the Defendants suggest Mr. Walker could have veered his car to the left rather than the right, thereby avoiding the accident, and they contend Walker may have been able to determine the left as a safer path had he consumed less hydrocodone that day. [*See* R. 117; R. 119.]

The Court finds the evidence presented by the Defendants sufficient to overcome Plaintiff Walker's summary judgment motion. While Mr. Walker's reaction in the moment may very well have been reasonable, Kentucky law "requires the trier of fact to consider fully 'the nature of the conduct of each party at fault.'" *Smith v. Toyota Motor Corp.*, 105 F. App'x 47, 52 (6th

6

Cir. 2004) (citing KRS § 411.182(2)).  Mr. Walker clearly had a legal duty to other drivers on the road, as the Kentucky Supreme Court has recognized "the general principle that each member of the public owes the remainder of the public a duty to exercise reasonable care in his or her everyday affairs." *Morgan v. Scott*, 291 S.W.3d 662, 631 (Ky. 2009).  Whether or not Mr. Walker breached that duty to exercise reasonable care by driving under the influence of twice the therapeutic range of hydrocodone is an outstanding factual issue, particularly when drawing all reasonable inferences in favor of the Defendants.  *See Morales*, 71 F.3d at 535.

That Mr. Walker was legally prescribed the hydrocodone is immaterial, particularly in light of KRS § 189A.010, which prohibits Kentucky drivers from operating motor vehicles anywhere while driving under the influence of any "substance or combination of substances which impairs one's driving ability," or while the presence of certain controlled substances— including hydrocodone—can be detected in the blood.  KRS § 189A.010(c)-(d); *see also Logan v. Cooper Tire & Rubber Co.*, No. 10-c-KS, 2011 WL 3360666, at *2 (E.D. Ky. Aug. 3, 2011) (finding that even if the driver consumed Percocet, which contains oxycodone, pursuant to a valid prescription, the driver was not absolved from fault for "driving while impaired").

Also immaterial is the fact that Mr. Walker was not specifically determined to be "under the influence."  The Sixth Circuit has found evidence of a driver's alcohol consumption to be relevant even where a responding officer testified the driver was not intoxicated at the time of the accident.  *Grimes v. Mazda N. Am. Operations*, 355 F.3d 566, 570 (6th Cir. 2004).  Evidence of the driver's consumption of two beers was allowed at trial despite the finding of non-intoxication.  *Id.* at 573.  As the Court stated, "evidence that she was under the influence of drugs or alcohol was clearly relevant.  It may have caused or contributed to the accident." *Id.*

Ultimately, the Sixth Circuit has indicated that "issues of negligence are ordinarily not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner. . . . It is only in the exceptional negligence case that the rule should be invoked." *Rogers v. Peabody Coal Co.*, 342 F.2d 749, 751 (6th Cir. 1965) (cited by *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 376 (6th Cir. 2009)).  Given that Kentucky law requires apportionment of fault in all tort cases, *see Smith*, 105 F. App'x at 50, the Court does not find this negligence case to be the kind of "exceptional" one in which summary judgment is appropriate. *See Rogers*, 342 F.2d at 751.  The jury is best suited to consider the evidence and determine whether or not Mr. Walker acted reasonably when operating his vehicle during the period surrounding the fatal accident.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Plaintiff's motion for summary judgment regarding the decedent's comparative fault is [R. 112] is **DENIED**.

This the 6th day of April, 2016.

Gregory F. Van Tatenhove
United States District Judge